SCHLEIER LAW OFFICES, P.C.
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone:  (602) 277-0157
Facsimile:  (602) 230-9250

TOD F. SCHLEIER, ESQ.  #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ.  #011696
Email: brad@schleierlaw.com

NATHAN GOLDBERG #61292
Email: ngoldberg@amglaw.com
JOHN WEST #102034
Email:  jwest@amglaw.com
GLORIA ALLRED #65033
Email: gallred@amglaw.com
ALLRED, MAROKO & GOLDBERG
6300 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90048
Telephone: (323)-653-6530
Facsimile: (323)-653-1660
*Pro Hac Vice Applications Granted*

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Briana McKnight, an individual, | Case No.: 2:20-cv-01956-DWL |
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| v. | **(Pursuant To Motion for Leave to Amend)** |
| Brian McKnight, an individual; DOES 1-10; | **Jury Trial Demanded** |
| Defendants. | |

Plaintiff Briana McKnight, for her Complaint against the Defendant Brian McKnight alleges as follows:

## INTRODUCTION AND PARTIES

1. Plaintiff Briana McKnight (hereinafter referred to as "Plaintiff" or "Briana") is, and was at all times mentioned herein, a citizen of the United States and of the State of Arizona, where she maintains her permanent home, is domiciled and is registered to vote. Briana is the daughter of defendant Brian McKnight, a well-known singer. Although the daughter of a celebrity, Briana did not publicize or draw public attention to the identity of her father. Until the defendant maliciously defamed the plaintiff on social media as alleged hereinafter, the public was not aware that Briana was the defendant's daughter. The defendant's wrongful actions toward Briana took place while she was a minor, and were directed at her in Arizona where she was domiciled at the time. Under the circumstances described hereinafter, the defendant, motivated by animosity toward Briana, set out to publicly humiliate her by falsely represented to his many social media followers that she had some years earlier, and while a minor, engaged in sexual relations with an older cousin.

2. Defendant Brian McKnight is, as noted above, a well-known singer. Plaintiff is informed and believes and based upon such information and belief alleges that he citizen of the United States and of the State of Georgia, where he is domiciled, has his permanent home and intends to return.

3. The true names, identities or capacities of the defendants sued as DOES 1 through 10, inclusive, are currently unknown to the plaintiff, who has therefore sued those defendants by such fictitious names. Plaintiff is informed and believes, and based upon such information and belief alleges that each of the fictitiously named defendants is an individual, corporation, partnership, joint venture, association or other form of

legal entity that is legally responsible in some manner for the events and happenings referred to herein, and/or that caused the injuries and damages to the plaintiff as hereinafter alleged. Plaintiff will seek leave of court to amend this complaint to show the true names, identities and/or capacities of the fictitiously named defendants when same have been ascertained.

4.     Plaintiff is informed and believes, and based upon such information and belief alleges, that in performing the acts and omissions alleged hereinafter, and otherwise at all relevant times, each of the defendants was the agent, servant, employee, partner, joint venturer and/or co-conspirator of each of the remaining defendants, and acted as within the course and scope of his authority, employment or conspiracy, or with the ratification, approval, permission and/or consent of the other defendants.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 in that this is an action between citizens of different states and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6.     Venue in this Court is proper pursuant to 28 U.S.C. §1391(b)(2)(b) in that a substantial part of the events giving rise to the claim, in the form of damages sustained by Briana due to defamation, were sustained in this judicial district.

## FACTUAL ALLEGATIONS

7.     After the plaintiff was born, the defendant and his then wife (who is not Briana's mother) had two sons named Niko and "BJ" before they divorced in 2003. Briana developed a fond relationship with Niko and BJ which she maintained over the years.

8.     During the years prior to the defamatory publication by the defendant alleged hereinafter, Briana's relationship with the defendant went through various phases. At times their relationship was cordial, and at times it became strained or all but non-existent. Until the defendant's acts alleged hereinafter, however, the relationship between the parties, whether positive or rocky, was conducted out of the public eye, and it was not the subject of media coverage. Briana never publicized the identity of her father or his celebrity status.

9.     By 2015, the defendant had little contact with Briana. She does not recall seeing him in 2016.

10.     In 2017, Briana and the defendant were in sporadic touch. Their contact and the nature of their relationship, or lack of a relationship, was not publicized or otherwise in the public eye.

11.     In 2018, Briana reached out in a confidential way to the defendant, to the defendant's second wife, and to the defendant's manager, in an effort to establish a bond with the defendant. The defendant dismissed Briana's efforts to bond with him

and did not see or meaningfully communicate with her. None of those facts were publicized or otherwise in the public eye.

12.     On August 10, 2019, without input or prompting from Briana (who had not been in contact with the defendant for an extended period of time), the defendant posted an entry on his Instagram page regarding his pride in the work ethic of his current wife's son Jack. Shortly thereafter, the defendant's son BJ McKnight ("BJ"), who was himself not a public figure, posted an entry on his (BJ's) own personal Instagram page accusing the defendant of abandoning his children. Briana did not prompt BJ's post, and had no input into it. BJ's post did not identify Briana.

13.     On August 15, 2019, Briana was still a minor. As of that time, the public was not aware that Briana was the defendant's daughter, the media did not cover her relationship (or lack of a relationship) with her father, and she had not drawn attention to the fact that she was the defendant's daughter. Only her inner circle of friends knew who her father was. The identity of Briana's father and/or her father's parenting of her had never been the concern or subject of any public controversy or attention.

14.     On August 15, 2019, Briana decided to share aspects of her perceptions of growing up with an unnamed absent father on her personal Instagram page. That post did not mention the defendant by name, did not describe him as a celebrity, did not refer to his profession, and provided no identifying information about the defendant. In that post, she simply described her personal feelings as the daughter of an unnamed

father who had withdrawn from her. The crux of her post was summarized in the last lines: "Some teenage girl who deals with this sh*t constantly who can relate to me and tell her side of the story and know that she's not alone."

15.    Briana's Instagram page had no commercial purpose. Briana did not advertise, publicize or otherwise alert the media or public to her father's identity in connection with that Instagram entry. Her post was not part of any larger dialogue.

16.    Briana's post of August 15, 2019 was unrelated to the subjects of sex or romance at all. She had never posted on the subject of sex. She had never sought or received public attention related to the subject of sex. Her private life or absence of a private life were not matters of public concern.

17.    The defendant read Briana's post of August 15, 2019 and, even though that post did not identify him by name or otherwise, it incurred or increased his hatred, ill will and anger toward her. In his hatred, ill-will and anger, he resolved to use his fame to widely circulate a vicious lie to cause Briana to suffer humiliation, emotional distress and damage to her reputation. In addition, or in the alternative, the defendant sought to preserve his image among his fans, who drove his income stream, by publicly stating that Briana was a promiscuous and incestuous minor, and thereby (he hoped) undermining Briana's credibility regarding a post that did not even identify him.

18.     Prior to August 16, 2019, Briana, who was a minor attending high school at the time, was not a public figure. She had achieved no general fame, no notoriety, no involvement in the affairs of society and no prominence of any kind in the resolution of public questions.

19.     On August 16, 2019, the day after Briana's post, the defendant, who had a few hundred thousand followers at the time, and who was able to attract media attention through his fame, posted a video clip regarding his sons and Briana on his widely followed Instagram and Facebook pages. His post of that date stated: "My daughter is about to turn 18, I'll get to her in a second." After speaking about his sons, the defendant falsely went on to publish the following about Briana:

> "And unfortunately along the way, a couple years ago I caught wind that there was an older cousin who was above 18 who was quite possibly having sex with her."

Defendant's clip stated that he "called...to the state office for children's affairs there in Arizona" and that he "never heard anything back," thus lending a veneer of apparent credibility to his outrageous lies about Briana.

20.     Those defamatory assertions stated or implied provably false assertions of fact. In the defamatory posting, the defendant literally said that "anything I say is actual and factual" (those are his words). His statement that he had reported the matter to law enforcement officials in Arizona reinforced the assertion that he was making

factual representations and suggested that the underlying "information" was credible and true. In particular:

a.  The defendant's assertion that he received information that Briana, when a minor, had sex with an adult cousin was a false assertion of a provable fact and implies the existence of undisclosed knowledge or factual information supporting the statement that Briana was having sex with an adult cousin when she was a minor. A reasonable person listening to the defendant's defamatory statement concerning Briana could conclude that the published statements assert factual matters.

b.  In the alternative or in addition, the defendant's assertion that Briana, was unchaste because, when a minor, she had sex with an adult cousin was defamatory in that it was a false representation of provable fact. A reasonable person listening to the defendant's defamatory statement concerning Briana could conclude that the published statements assert factual matters.

21.  In fact, Briana had never engaged in any sexual contact of any kind with any relative of any age while a minor or otherwise. Plaintiff is informed and believes and based upon such information alleges that no one ever told the defendant that she had sex with a cousin or words to that effect. If something to that effect was stated, the defendant seized upon an obviously untrustworthy rumor, failed to look into its truthfulness, disregarded the probable falsity of any such rumor, and recklessly and

maliciously repeated it to a large audience of his followers knowing that the repetition would cause harm to Briana.

22.    At the time the defendant published the above alleged false and defamatory statements of and concerning Briana to an audience of his fans:

a.    The defendant knew that those statements were false and he knowingly and maliciously published then without regard for the truth or the harm they would cause to Briana, and with the intent to cause her harm.

b.    If the defendant had heard some rumor to the effect that Briana, when a minor, was having sex with an adult cousin or words to that effect, the defendant had a high degree of awareness of the probable falsity of that rumor and/or entertained serious doubts as to the truth of that rumor. Despite such disbelief or doubts regarding the truth of the rumor, the defendant published it aware of its probable falsity and/or with reckless disregard for its truth or falsity.

c.    If the defendant had heard some rumor to the effect that Briana, when a minor, was having sex with an adult cousin or words to that effect, the defendant failed to investigate, or failed to use reasonable care in investigating, the truth of that rumor before publishing it to a large audience of his fans.

d.    The defendant had a subjective awareness of the probable falsity of any rumor he was publishing, and in fact entertained serious doubts as to the truth of his publication concerning any such rumor, in that:

i.    Briana never indicated in any way to the defendant, from whom she was estranged and barely in contact, that she had engaged in sexual contact with any relative, or anyone at all.

ii.    Briana's mother never indicated in any way to the defendant, that Briana had engaged in sexual contact with any relative, or anyone at all.

iii.    Due to estrangement, the defendant did not know if Briana had spent any time with "cousins" or family members on her mother's side.

iv.    The defendant knew that with the exception of his late mother, Niko and BJ, Briana had extremely minimal contact with members of his family over the years prior to his defamatory statement, thus making it virtually impossible for her to have had any kind of sexual contact with them. The defendant knew for certain that Briana had spent no time at all with "cousins" on his side. The defendant knew that on those very infrequent and long ago occasions when Briana was briefly in the presence of "cousins" on his side, that he was nearby, and that she was not alone with those "cousins," thus making sexual contact an impossibility.

v.    The defendant contacted Briana's mother to report the supposedly devastating information he received.

vi.    The defendant did not contact any member of Briana's family on her mother's side to investigate the alleged rumor.

vii.    The defendant's awareness of the probable falsity of the rumor is evidenced by his vague statement that he "caught wind" of sexual activity "a couple of years ago."

viii.    The defendant knew that at the time of the alleged sexual activity, Briana was so young that time alone, unsupervised and in isolated spaces suitable to sexual activity with older "cousins" was unlikely.

23.    The defendant's posting on August 16, 2019 contained other statements and omissions which illustrate his hatred and ill-will for Briana.

a.    To hurt her, he stated that Briana's "mother only had a child with" him "for money in the first place" and that her mother instituted the estrangement between him and Briana.

b.    The defendant stated that Briana had sex as a minor with an older "cousin." The defendant did not identify the older cousin he referred to because his goal was to hurt Briana, and because there was no such "cousin."

c.    The defendant stated that Briana's mother had, "a couple of years ago" done something which "completely estranged her from us." When he made that statement, the defendant knew (1) that in April of 2017, Briana had sent him condolences on the death of his mother, (2) that in June of 2017, Briana sent him birthday wishes, (3) that in June of 2017, Briana sent him father's day wishes, (4) that in May of 2018, Briana reached out via text to his wife stating that she wanted to get in

touch with her father and to mend her relationship with him, and that the response was only to wish Briana well, (5) that later in May of 2018, Briana texted the defendant that she loved him, and that he responded by texting her "can I call you later?" but he failed to do so, and (6) that in November of 2018, Briana reached out to the defendant's manager stating that she wanted her father's phone number (which was never provided).

       d.    The defendant falsely stated that he never missed a child support payment pertaining to Briana, and also stated that she went to "one of the most incredible private schools in Arizona, so I don't know where this is all coming from," suggesting that Briana was unworthy of credibility.

       e.    Briana's mother was never contacted by any law enforcement representative concerning alleged sexual contact between Briana and any relative (or other person) while she was a minor.

24.    The defendant had an identifiable group of children, some of whom were named in his post along with his current wife, Leilani (who was also named in the post). He knew that Briana, who for years  used the last name "McKnight," could be identified from his post, particularly in light of his disclosures in the post that she was in Arizona and attended a private school. He drew attention to her and assured the public of the ability to identify Briana.

25.     At all relevant times, the defendant knew that the publication of a representation that Briana was unchaste and had engaged in incestuous sex as a minor would be devastating to her emotionally and damaging to her reputation. With that knowledge, and for the purpose of harming her emotionally and harming her reputation, the defendant deliberately and recklessly made that representation to a large audience of his fans.

26.     At all relevant times, the defendant knew that the publication of a statement that he had information that Briana engaged in sex as a minor with a cousin would be devastating to her emotionally and damaging to her reputation. With that knowledge, and for the purpose of harming her emotionally and harming her reputation, the defendant deliberately and recklessly presented that representation before a large audience of his fans and before the media.

27.     Predictably, and as the defendant intended, the media picked up the false story of Briana's supposed sexual relationship with a cousin while she was a minor, thus magnifying the impact of the defamation upon her.

28.     The defendant's false publication of the factual assertion that Briana had while a minor engaged in sexual relations with an older cousin was false,  defamatory and unprivileged. It had a natural tendency to injure.

**FIRST CAUSE OF ACTION**

**(For Defamation Against All Defendants)**

29.     By this reference, plaintiff incorporates the allegations of paragraphs 1 through 28, inclusive, hereof as though fully set forth at this point.

30.     On August 16, 2019, the defendant published the above-alleged defamatory statements imputing unchastity to the plaintiff.

31.     The defendant's statements were false, defamatory, unprivileged and has a natural tendency to injure or cause special damage.

32.     As a result of defendant's publication of the defamatory statements, the plaintiff has been greatly injured in her reputation and has suffered extreme emotional distress, shame, humiliation, pain and anguish and injury to her reputation in an amount in excess of the jurisdictional minimum of the court that  will be proven at trial.

33.     The acts of the defendant were performed with actual malice, an evil heart and evil mind and/or with reckless disregard for the plaintiff's rights and feelings. As a result, plaintiff is entitled to punitive or exemplary damages from all defendants in a sum according to proof at trial.

/ / /

**SECOND CAUSE OF ACTION**

**(False Light Invasion of Privacy Against All Defendants)**

34.    By this reference, plaintiff incorporates the allegations of paragraphs 1 through 28, inclusive, hereof as though fully set forth at this point.

35.    As a private person, plaintiff is entitled to her privacy free from invasion through the publication of false statements and innuendo.

36.    On August 16, 2019, the defendant gave publicity to a matter concerning plaintiff as alleged hereinabove that placed plaintiff in a false light, thereby invading plaintiff's privacy.    Defendant's conduct was highly offensive to plaintiff and defendant acted with knowledge or in reckless disregard as to the falsity of the publicized matter and the false light in which plaintiff would be placed.

36.    As a direct and proximate result, plaintiff has sustained damage to her reputation and has sustained mental and emotional distress, pain and suffering and embarrassment as a result of defendant's actions.

37.    The acts of the defendant were performed with actual malice, an evil heart and evil mind and/or with reckless disregard for the plaintiff's rights and feelings. As a result, plaintiff is entitled to punitive or exemplary damages from all defendants in a sum according to proof at trial.

### THIRD CAUSE OF ACTION

### (Breach of Contract Against All Defendants)

38.     By this reference, plaintiff incorporates the allegations of paragraphs 1 through 6, inclusive, hereof as though fully set forth at this point.

39.     The plaintiff was born on November 26, 2001.

40.     On or before November 23, 2003, while the plaintiff was a minor, the defendant entered into a written contract with Patricia Driver, the defendant's mother, which was expressly made with the plaintiff as the intended third party beneficiary. A true and correct copy of that contract, which was incorporated into a "Stipulate Judgment of Paternity" ("the Contract") that was filed in a family law proceeding in Maricopa County, Arizona, is attached as Exhibit "A" hereto. The Contract provides in relevant part as follows:

> "On or before January 1, 2004, [Brian McKnight] shall obtain and maintain a whole life, universal or similar insurance policy on his life in the face amount of $1 million with [Briana McKnight] as the sole irrevocable beneficiary. Irrespective of what type of life insurance policy [Brian McKnight] obtains on his life for the benefit of the minor child, the terms of the policy shall provide that, by the time [Briana McKnight] reaches the age of 18 and has graduated high school, she will have a million dollar life insurance policy on his life free of any further premium payment obligations."

41.     At all relevant times, the defendant and Patricia Driver intended to directly benefit the plaintiff in entering into the Contract, and their intention to do so is

indicated in the Contract itself. The promise in the Contract was made to the plaintiff, who was the primary party in interest as to that promise.

42.     The plaintiff turned 18 on November 26, 2019.

43.     As of November 26, 2019, the Defendant had failed to pay the premiums on the $1 million dollar life insurance policy that the Contract required him to fully pay for by the time the plaintiff reached the age of 18 and graduated from high school. Defendant otherwise failed to put such a life insurance policy in place. There is no fully paid $1 million policy of life insurance on the life of the defendant in existence.

44.     The defendant breached the Contract by failing to procure and/or pay for a million dollar life insurance policy on his life for the benefit of the plaintiff free of any further premium payment obligations by the time the plaintiff reached the age of 18 and graduated from high school. Plaintiff is informed that the defendant failed to pay no less than $100,040.00 in premiums on the required policy. Defendant otherwise failed to procure the required policy.

45.     By virtue of that breach, plaintiff is entitled to all damages proximately caused by the breach and/or all damages within the contemplation of the parties at the time they entered into the Contract, including but not limited to damages measured by the cost of procuring such a life insurance policy at this time or damages measured by the amount necessary to replicate the benefit that the defendant failed to procure.

46.     Plaintiff is also entitled to interest on all sums owed for breach of contract, and to attorneys fees according to law.

## FOURTH CAUSE OF ACTION

## (Restitution Against All Defendants)

47.     By this reference, plaintiff incorporates the allegations of paragraphs 1 through 6, inclusive, and 39 through 44, inclusive, hereof as though fully set forth at this point.

48.     The purpose of the Contract was to provide for the plaintiff's financial security, as the defendant's child, in the event of the defendant's death. The plaintiff was in an especially vulnerable position when the contract was entered into in that she was herself unable to provide the benefit that the Contract required the defendant to provide for her.

49.     The defendant has been unjustly enriched by his failure to pay insurance premiums on the life insurance policy that he promised to pay for and procure for the plaintiff's benefit in that he has had the use of those funds for his own benefit while denying the plaintiff a unique benefit he contracted to provide for her.

50.     The defendant should not be entitled to take advantage of his own wrong by retaining the amounts he should have paid as life insurance premiums for the benefit of the plaintiff. Such enrichment of the defendant would be unjust.

51.     The defendant is under a duty to make restitution to the plaintiff of the amount by which he has been enriched, in the amount of premiums he failed to pay, together with interest thereon.

## FIFTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants)

52.     By this reference, plaintiff incorporates the allegations of paragraphs 1 through 6, inclusive, 39 through 44, inclusive, and 48 through 50, inclusive, hereof as though fully set forth at this point.

53.     Arizona law implies a covenant of good faith and fair dealing in every contract. The implied covenant of good faith and fair dealing prohibits a party from doing anything to prevent the other contracting parties from receiving the benefit of the agreement.

54.     At the time that the Contract came into existence, and at all times prior to the plaintiff's eighteenth birthday, there existed a special relationship between the plaintiff and the defendant in that the defendant was the plaintiff's natural father and she was dependent upon his fulfillment of the Contract for her financial security. The purpose of the Contract was not commercial advantage. Instead, the purpose was to provide for the plaintiff's financial security, as the defendant's child, in the event of the defendant's death. The plaintiff was in an especially vulnerable position when the

contract was entered into in that she was herself unable to provide the benefit that the Contract required the defendant to provide for her.

55.     By virtue of the defendant's conduct, the plaintiff has been deprived of the benefit of the Contract in the form of financial security upon defendant's death.

56.     The defendant's conduct breached the implied covenant of good faith and fair dealing. The defendant intentionally breached the implied covenant by failing and refusing to provide for the plaintiff's financial security in the event of his death, and by keeping the funds that should have gone into premiums for himself.

57.     The plaintiff is entitled to recovery of all damages proximately caused by the defendant's breach of the implied covenant of good faith and fair dealing.

58.     The defendant acted with oppression and malice in that the defendant chose to keep for himself the premiums that were required in order to provide for the plaintiff's economic security, and thus sacrificed her security for his personal benefit. Plaintiff is therefore entitled to punitive and exemplary damages according to proof.

**SIXTH CAUSE OF ACTION**

**(Specific Performance All Defendants)**

59.     By this reference, plaintiff incorporates the allegations of paragraphs 1 through 6, inclusive, 39 through 44, inclusive, and 48 through 50, inclusive, hereof as though fully set forth at this point.

60.     The defendant entered into the Contract to, among other things, procure a $1 million policy of life insurance on his own life for the benefit of the plaintiff, who was then a minor, and to cause that policy to be fully paid for and in force at the time she turned eighteen and graduated from high school.

61.     The terms of the Contract were certain and fair.

62.     Plaintiff did not act inequitably such that the defendant would be excused from his duty to perform the Contract.

63.     Given the defendant's fame and wealth, specific enforcement of the Contract would not inflict hardship on the defendant or the public.

64.     Plaintiff has no adequate remedy at law for the defendant's failure to have in place the fully paid contract of life insurance required by the Contract in order to provide her with financial security. The subject matter of the Contact is unique in that it was intended for the plaintiff's financial security.

65.     Plaintiff is entitled to issuance of a decree by the Court requiring the defendant to put into effect a fully paid a $1 million policy of life insurance on his own life for the benefit of the plaintiff, who was then a minor, and to cause that policy to be fully paid for and in force.

WHEREFORE, Plaintiff prays judgment against defendants as follows:

1.     That Plaintiff be awarded general and special damages in an amount according to proof at trial;

2.    That Plaintiff be awarded punitive damages in an amount according to proof at trial;

3.    That Plaintiff be awarded costs of suit; and

4.    That this Court award such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a jury trial.

DATED this 9th day of February 2021.

**ALLRED, MAROKO & GOLDBERG**

By:  /s/ John S. West
John S. West
Gloria Allred
Nathan Goldberg

**SCHLEIER LAW OFFICES, P.C.**

By: /s/ Tod F. Schleier
Tod F. Schleier
Attorneys for Plaintiff Briana McKnight

*Certificate of Service*

I hereby certify that on the 9th day of February 2021, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing, and for transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Gregory Collins
Kercsmar & Feltus, PLLC
7150 E. Camelback Road, Suite 285
Scottsdale, AZ  85251
gbc@kflawaz.com

Jordan Susman
Margo Arnold
Nolan Heimann, LLP
16133 Ventura Blvd, Ste 82
Encino, CA  91436
jsusman@nolanheimann.com
marnold@nolanheimann.com
Counsel for Defendant

/s/ Cindy J. Anderson