JOHN S. WEST #102034
Email: jwest@amglaw.com
NATHAN GOLDBERG #61292
Email: ngoldberg@amglaw.com
GLORIA ALLRED #65033
Email: gallred@amglaw.com
**ALLRED, MAROKO & GOLDBERG**
6300 Wilshire Boulevard, Suite 1500
Los Angeles, CA 90048
Telephone: (323)-653-6530
Facsimile: (323)-653-1660
*Pro Hac Vice Applications Granted*

**SCHLEIER LAW OFFICES, P.C.**
3101 N. Central Avenue, Suite 1090
Phoenix, Arizona 85012
Telephone: (602) 277-0157
Facsimile: (602) 230-9250
TOD F. SCHLEIER, ESQ. #004612
Email: tod@schleierlaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Email: brad@schleierlaw.com

Attorneys for **Plaintiff, Briana McKnight**

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF ARIZONA

| | |
|---|---|
| BRIANA McKNIGHT,<br><br>                Plaintiff,<br>v.<br><br>BRIAN McKNIGHT, an individual, and DOES 1 through 100, inclusive,<br><br>                Defendants. | No. CV-20-01956-PHX-DWL<br><br>**SECOND REPORT OF MEET AND CONFER DISCUSSIONS FOLLOWING INITIAL DISCOVERY CONFERENCE WITH JUDGE LANZA** |

# **WHILE THE PARTIES WERE ABLE TO RESOLVE ONE KEY ASPECT OF THEIR DISPUTE, THEY REMAIN UNABLE TO RESOLVE THE REMAINING ASPECT OF THE DISPUTE AFTER FURTHER GOOD FAITH EFFORTS**

### The Dispute

The parties stipulated to the following summary of their discovery disputes:

"Whether, under the circumstances of this case, plaintiff Briana McKnight is (or is not) entitled to a protective order barring defendant Brian McKnight from inquiry into her alleged sexual history other than inquiry into whether she had sex with an older cousin when she was a minor."

### First Meet and Confer and Initial Conference with Judge Lanza

Following their initial meet and confer, the parties participated in a Court ordered discovery conference with the Hon. Judge Lanza on March 31, 2021. At the conclusion of the conference, Judge Lanza directed the parties to meet and confer again as follows:

> "Based on the current Complaint in this action, I find that, on the one hand, the way that at least some of the questions are written are overbroad because they define sexual contact in too broad of a way. But at the end of the day, based on the current allegations, the defense is entitled to propound discovery related to a more narrower definition of sexual contact."

March 31, 2021 Transcript (Document no. 46) at pg. 28, lines 5-11

### Second Meet And Confer

Following the March 31, 2021 conference with Judge Lanza, counsel for the parties met and conferred in good faith again in writing and over the telephone in an effort to resolve the pending discovery dispute. Despite their sincere efforts, the parties were not able to resolve that dispute, and have reached an impasse.

The parties summarize their unresolved disputes as follows:

1. Whether

    (a) **PLAINTIFF'S PROPOSAL**: discovery is to be limited to "sexual contact" (to be defined) between the plaintiff and any relative of the plaintiff prior to August 16, 2019, the date on which the defendant posted the video clip that gave rise to the defamation-based claims, or

    (b) **DEFENDANT'S PROPOSAL**: discovery is to be allowed into "sexual contact" (to be defined) between plaintiff and any individual prior to August 16, 2019, the date on which the defendant posted the video clip that gave rise to the defamation-based claims.

2. Whether

    (a) **PLAINTIFF'S PROPOSAL**: for purposes of discovery in this matter, the term "sexual contact" means fornication or any other form of sexual intercourse (oral, anal or vaginal) or

    (b) **DEFENDANT'S PROPOSAL**: for purposes of discovery in this matter, the term "sexual contact" means any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact

The parties previously agreed that a judicial resolution of this discovery dispute at this time will avoid multiple discovery motions.

**PARTY POSITIONS BEGIN ON NEXT PAGE**

## **PLAINTIFF'S POSITION**

In this narrow defamation action, this discovery dispute arises out of the Defendant's attempt to force the defendant to disclose every kiss or other form of sexual contact she ever had with any person at any time in her life. (See the interrogatories quoted in the parties' first Joint Report). The Plaintiff's constitutional right to sexual privacy, however, compels a much narrower definition of "sexual contact" and the restriction of discovery to permissible "sexual contact" with relatives prior to August 16, 2019 (the date of the defamatory publication).

**(A)     Timing Restriction: Acts Prior To August 16, 2019.**

During the discovery conference, Briana's attorney pointed out that the any sexual contact after August 16, 2019, the date of his defamatory publication, would be unrelated to the defendant's state of mind on the date of that publication. Transcript 10:24-11:6. Post-publication sexual contact certainly falls under the constitutional right of sexual privacy, and because that contact was unknown to the Defendant on August 16, 2019, it could not have been a factor in his decision to assert that Briana, while a minor, had sex with a cousin. Such information is therefore not reasonably calculated to lead to relevant information. In the analogous area of medical privacy, one Court summarized the situation that the Defendant is trying to create perfectly: "Baker is not entitled to rummage around in Mr. Kronenberg's privileged and confidential mental health records on a scavenger hunt for nuggets of evidence, previously unknown to and not relied on by Baker in this case, which may be used to reimagine another reason for why it did not believe that Mr. Kronenberg was a 'qualified individual' at the time of his termination." *Kronenberg v. Baker & McKenzie LLP* (N.D. Ill. 2010) 747 F.Supp.2d 983, 995

**(B) Restriction As To Persons: "Sexual Contact" With A Relative**

Briana's constitutional right of sexual privacy protects against disclosure of sexual history, the details of relationships, and the identity of persons with whom

there may have been a degree of sexual contact. *Hughes v. Twenty-First Century Fox, Inc.* (S.D.N.Y. 2018) 327 F.R.D. 55, 57; *Makor v. BNSF Railway Company* (C.D. Cal., Jan. 5, 2015, No. EDCV14671VAPSPX) 2015 WL 13358362, at *2.[1]

While a party may waive privacy rights by putting private matters at issue, any such "waiver…is 'limited to the private information that is relevant to the lawsuit.' " *Weiland v. City of Concord* (N.D. Cal., Aug. 7, 2014, No. 13-CV-05570-JSC) 2014 WL 3883481, at *2. It is therefore appropriate to discuss limitations as to the persons as to whom discovery is permissible with the SAC itself. Briana she urges the Court to examine what she actually alleged, opposed to the Defendant's characterization of what is alleged. "*[T]he cases, themselves, make clear that any [privacy] waiver must be related to 'the[ ] claim' advanced by the plaintiff, not some claim advanced by the defendant*." *Kronenberg*, *supra*, 747 F.Supp.2d at 991 (emphasis added).

In ten different places, and in the clearest possible terms, the SAC specifies that Briana's defamation claim is based on the statement that she had sex with a cousin, i.e., incest.[2] Briana respectfully submits that the scope of discovery should be limited to sexual contact (see below) between Briana and relatives prior to the date of

---

[1] To date, the Defendant has made no provision for the privacy of third parties.

[2] In particular, Briana alleges that the Defendant falsely represented that Briana, "<u>while a minor"</u> had "…*engaged in sexual relations with an older cousin*" (SAC ¶1); that "there was *an older cousin who was above 18 who was quite possibly having sex with her*'" (SAC ¶19); that she "…*had sex with an adult cousin*…" (SAC ¶20(a)); that she "was *unchaste because… had sex with an adult cousin*." (SAC ¶20(b)); that she "*was having sex with an adult cousin,*" (SAC ¶22(b)): that she "*was having sex with an adult cousin*…" (SAC ¶22(c)); that she had "…*sex as a minor with an older 'cousin'*" (SAC ¶23(b)); that she "*engaged in sex as a minor with a cousin*" (SAC ¶ 26); that the defendant published a "story of *Briana's supposed sexual relationship with a cousin*" (SAC ¶27) and that *Briana had while a minor engaged in sexual relations with an older cousin*." (SAC ¶28). See also SAC ¶27 re "supposed sexual relationship with a cousin."

the disputed publication.

### (C) Restrictions As To Forms Of "Sexual Contact"

Judge Lanza noted that "…paragraph 30, it states that the defamation in this case was by, quote, unquote, imputing unchastity." Transcript 4:21-23. On that issue, Briana's attorney stated: "If this is about sexual intercourse, which is the term the defendant used…chastity relates to that."

The official Comments on the Arizona pattern instruction for defamation provide as follows: "Presumed damages are available where the defamatory statement imputes to the plaintiff… (iv) ***serious sexual misconduct***….Restatement (Second) of Torts §§ 570–574…RAJI (Civil) DI 8 (5th ed.)" (emphasis added). Even the United States Supreme Court has adopted Restatement §574. In *Carey v. Piphus* (1978) 435 U.S. 247, 263 [98 S.Ct. 1042, 1052], the United States Supreme Court cited §574 as authority for the rule that "[t]he essence of slander per se is the publication by spoken words of false statements imputing to a person…***serious sexual misconduct***."

The official Comments to §574 state that "[t]he rule stated in this Section has been generally applied to any statement that imputes any form of unchastity to a woman…The rule applies to a statement charging a woman with specific acts of adultery, ***fornication or any other form of sexual intercourse with a man other than her husband, as well as to general charges of unchaste conduct. It does not apply to mere imputations of immodesty that do not imply unchaste conduct***." (emphasis added). To comply with the law, and to avoid undue and humiliating intrusion into private matters, Briana proposes that for purposes of discovery in this matter, the term "sexual contact" means fornication or any other form of sexual intercourse (oral, anal or vaginal). A broader definition would only reward the defendant for a false allegation that the plaintiff, while a minor, had intercourse with a cousin.

## **DEFENDANT'S POSITION**

### Background

Plaintiff seeks to limit discovery that, as the Court already stated during the prior hearing on this issue, is clearly relevant to the claims as pleaded.

Plaintiff alleged in the operative Second Amended Complaint ("SAC"): "On August 16, 2019, the defendant published the above-alleged defamatory statements imputing unchastity to the plaintiff." SAC ¶ 30. Consequently, Defendant served discovery on Plaintiff, seeking information regarding her sexual history prior to August 16, 2019. Plaintiff has refused to provide such information.

On March 31, 2021, the Court held a hearing on the very same issues now before it, and the Court stated:

- "[I]f your lawsuit had just said that he defamed the plaintiff by saying she engaged in incest, I think you'd have – I'd probably be with you. The issue I have is when you look at the Complaint and you look specifically at paragraph 30, it states that the defamation in this case was by, quote, unquote, imputing unchastity." TR 4:18-23.

- "The allegation you chose to make is that it was defamatory by implying that your plaintiff was unchaste. And to me that brings in the -- that raises the question, was she, in fact, chaste? Because if she – you know, truth is a defense to defamation." TR 5:1-5.

- "And paragraph 30 is written much more broadly than the way you characterize what your theory of the case is. And so given that you've sued Mr. McKnight under the theory that he engaged in defamation by imputing unchastity, I'm struggling to understand why this information isn't relevant." TR 5:11-15.

- "[I]t's dispositive to me that the ultimate allegation in this case is that the defendant engaged in defamation by, quote, unquote, imputing unchastity, unquote. That is broader than imputing incest, and because that's the allegation in the

case, the defense has the right to defend itself by seeking information that would show that any imputation of unchastity was, in fact, true. And that's what some of these interrogatories get at." TR 23:12-19.

- "I appreciate, Mr. West, that you've stated that the core of the case really isn't about unchastity, it's about incest with a cousin. Unfortunately that's not what the Complaint says, and I need to be guided by what the allegations are in the Complaint, because those are the allegations that the defense has a right to defend against." TR 24:7-12.

- "The allegation in this case, as I stated earlier, is unchastity." TR 25:7-8.

The Court concluded: "the defense is entitled to propound discovery related to a more narrower definition of sexual contact" (TR 28:10-11) and ordered the parties to meet and confer to "tighten[] up to define sexual contact [in the discovery requests] in a narrower way than they're currently written." TR 25:23-25.

**Defendant's Proposed Definition Tracks Arizona Statute**

Defendant has proposed that "sexual contact" be defined *exactly* as it is under Arizona law: "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact." Ariz. Rev. Stat. Ann. § 13-1401. Plaintiffs, however, refuse to accept this compromise and instead demand **additional restrictions** on discovery.

**Plaintiff's Proposed Definition Ignores Arizona Law**

Plaintiff's claim for defamation is governed by Arizona law. Notwithstanding, Plaintiff wants to impose a more narrow definition of "sexual contact" than the one provided for by the Arizona legislature. The only reference to Arizona law in Plaintiff's brief is to "**presumed damages**"—i.e., defamation per se—but the SAC does not even allege defamation per se. Even if it did, that would not be a basis for limiting discovery on Plaintiff's defamation claim.

The remainder of Plaintiff's arguments is a hodgepodge of inapposite case law regarding "serious sexual misconduct"—something that Plaintiff did not allege in the SAC.

**Plaintiff's Request To Limit Discovery To Sexual Contact With Relatives Rehashes Arguments Already Rejected By The Court**

At the hearing on March 31, the Court stated: "I appreciate, Mr. West, that you've stated that the core of the case really isn't about unchastity, it's about incest with a cousin. Unfortunately that's not what the Complaint says, and I need to be guided by what the allegations are in the Complaint, because those are the allegations that the defense has a right to defend against." TR 24:7-12.

Notwithstanding, Plaintiff makes the exact same arguments in its brief above. The Court should reject these arguments for the same reason it did before: "[I]t's dispositive to me that the ultimate allegation in this case is that the defendant engaged in defamation by, quote, unquote, imputing unchastity, unquote. That is broader than imputing incest, and because that's the allegation in the case, the defense has the right to defend itself by seeking information that would show that any imputation of unchastity was, in fact, true. And that's what some of these interrogatories get at." TR 23:12-19.

**Conclusion**

On March 31, the Court ordered the parties to meet and confer regarding a more narrow definition of "sexual contact."  Defendant did so and proposed a definition taken verbatim from Arizona law. Plaintiff, however, has refused, and instead wants to relitigate the same issues the Court already rejected.

Defendant respectfully requests that Court order Plaintiff to comply with her discovery obligations and respond to Defendant's discovery requests subject to the definition of "sexual contact" found in Arizona law.

DATED January ___, 2021

ALLRED MAROKO & GOLDBERG

By: _____
    JOHN S. WEST
    Attorney for Plaintiff

SCHLEIER LAW OFFICES, P.C.

By: /s/Tod. F. Schleier
    TOD F. SCHLEIER
    Attorney for Plaintiff

NOLAN HEIMANN LLP

By: /s/ Jordan Susman
    JORDAN SUSMAN
    Attorneys for Defendant