**WO**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Briana McKnight, | No. CV-20-01956-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Brian McKnight, et al., | |
| Defendants. | |

Pending before the Court is the parties' joint notice of discovery dispute.  (Doc. 54.) For the following reasons, the first disputed issue is resolved in Plaintiff's favor and the second disputed issue is resolved in Defendant's favor.

## RELEVANT BACKGROUND

The core allegation in this action is that Defendant Brian McKnight ("Defendant"), a "well-known singer" and the estranged father of Plaintiff Briana McKnight ("Plaintiff"), posted a video on his social media accounts in August 2019 in which he falsely accused Plaintiff of "having sex" with "an older cousin" when she was a minor.  (Doc. 25 ¶¶ 1-2, 19.)    Based on this allegation, Plaintiff has asserted claims against Defendant for defamation and false light invasion of privacy.  (*Id.* ¶¶ 29-37.)[1]

The current dispute arises from how Plaintiff chose to characterize the elements of her defamation claim in the complaint.  In paragraph 30, the complaint alleges as follows:

---

[1]    Although not relevant here, Plaintiff has also asserted various contract-related claims (Doc. 25 ¶¶ 38-65) that are the subject of a pending motion to dismiss (Doc. 29), which will be addressed in due course.

1    "On August 16, 2019, the defendant published the above-alleged defamatory statements
2    *imputing unchastity to the plaintiff*." (*Id.*, emphasis added.)

3           During the discovery process, Defendant propounded interrogatories to Plaintiff.
4    As relevant here, one interrogatory asked Plaintiff to "[i]dentify all persons with whom you
5    had sexual contact of any kind prior to August 15, 2019" and another asked Plaintiff to
6    "[d]escribe each sexual encounter you had prior to August 15, 2019, including the person
7    involved, their age at the time, the place the encounter occurred, and the nature of the
8    encounter (*e.g.,* kissing, holding, petting, intercourse)." (Doc. 37 at 4-5.)  Plaintiff objected
9    when she received these interrogatories, and after the parties were unable to resolve their
10   differences via the meet-and-confer process, they sought judicial intervention.  (Doc. 37.)

11          On March 31, 2021, the Court held a telephonic hearing.  (Doc. 40 [minute entry];
12   Doc. 46 [transcript].)  In a nutshell, Plaintiff argued that the interrogatories were overbroad
13   and oppressive because they weren't limited to the sex-with-a-cousin allegation and instead
14   sought information concerning her entire sexual history, while Defendant argued that
15   because Plaintiff had chosen to characterize her theory of defamation as "imputing
16   unchastity"—an allegation that is far broader than an allegation of incest—she had opened
17   the door to an inquiry into her sexual history, because truth is a defense to defamation and
18   evidence of prior sexual activity would show that any imputation of unchastity was true.

19          During the hearing, the Court expressed agreement with, and sympathy toward,
20   aspects of Plaintiff's position, noting that "I am as uncomfortable as one can be with the
21   idea of forcing an 18-year-old . . . woman . . . to have to answer discovery requests
22   concerning her sex life.  I know how private and intensely personal those things are, and I
23   wish that there was some way that we didn't have to go there."  (Doc. 46 at 24.)
24   Nevertheless, the Court also noted that Defendant's arguments had some force in light of
25   the peculiar wording ("imputing unchastity") of the complaint.  (*Id.* at 4 ["[I]f your lawsuit
26   had just said that he defamed the plaintiff by saying she engaged in incest, . . . I'd probably
27   be with you.  The issue I have is when you look at the Complaint . . . your allegation in this
28   case isn't simply that . . . it was defamatory to accuse somebody of engaging in incest.  The

allegation you chose to make is that it was defamatory by implying that [Plaintiff] was unchaste.  And . . . that raises the question, was she, in fact, chaste?  Because . . . truth is a defense to defamation.".)  Thus, the Court asked Plaintiff's counsel to explain why Plaintiff had chosen to use that particular phrase in the complaint.  (*Id.* at 12 ["When you said, 'the law uses the word chastity,' where is that coming from?"]; *id.* at 14 ["Are you saying that . . . if you had written the Complaint that accused the defendant of engaging in defamation by falsely accusing your client of engaging in incest, that would have been a legally deficient Complaint . . . and there is some rule of law that required [the phrase 'unchastity']?"].)  Plaintiff's counsel responded by providing an answer that, at the time, was confusing to the Court.  On the one hand, counsel seemed to acknowledge that the "imputing unchastity" language wasn't legally required.  (*Id.* at 14 ["No, it would not have been deficient [without the phrase]."].)  On the other hand, counsel then stated, without citation, that "the only reason those words appeared in the Complaint is because that's how Arizona law terms defamation.  And so I had to relate what was said to what was recognized in the law."  (*Id.*)

At the conclusion of the hearing, the Court ruled that it was inclined to allow Defendant to obtain some of the information requested in the challenged interrogatories because Plaintiff had, for whatever reason, chosen to phrase her theory of liability as "imputing unchastity," which "is broader than imputing incest," and "because that's the allegation in this case, the defense has the right to defend itself by seeking information that would show that any imputation of unchastity was, in fact, true."  (*Id.* at 23.)  However, the Court also ruled that the interrogatories were problematic as written because "they seem to define sexual contact in an overbroad way."  (*Id.* at 25.)  Thus, the Court ordered to parties to engage in additional meet-and-confer efforts in an attempt to narrow the scope of the interrogatories.  (*Id.* at 25-26.)  Plaintiff's counsel then asked whether the scope of discovery would change "[i]f we were to amend the Complaint to clarify that . . . the core of the defamation claim is that she had sexual intercourse, incest with a cousin."  (*Id.* at 26.)  In response, the Court stated that "the reasons for my ruling today are primarily based

on the fact that I view the allegation in this case that the defamatory statement was imputing unchastity.  And if one is engaged in that form of defamation, they have a right to prove the truth of it by showing that the person was not, in fact, unchaste.  If the parameters of the defamation claim were different, then that would likely control what's discoverable and what's not discoverable."  (*Id.* at 27.)

Following the March 31, 2021 hearing, Plaintiff did not seek to amend the complaint to narrow its scope.  The parties also engaged in further meet-and-confer efforts regarding the disputed interrogatories.  (Doc. 54.)  On May 11, 2011, after those efforts proved unsuccessful, they filed the notice of discovery dispute that is the subject of this order.  (*Id.*)

## DISCUSSION

The parties have identified two areas of continued disagreement concerning the interrogatories.  *First*, the parties disagree about which sexual partners Plaintiff should be required to disclose.  Plaintiff argues her disclosure obligations should be limited to "any relative" with whom she had sexual contact before August 16, 2019, while Defendant argues the disclosure obligations should encompass "any individual" with whom Plaintiff had sexual contact before August 16, 2019.  (*Id.* at 3.)  *Second*, the parties disagree about how the phrase "sexual contact" should be defined.  Plaintiff argues it should be limited to "fornication or any other form of sexual intercourse (oral, anal or vaginal)" while Defendant argues it should encompass "any direct or indirect touching, fondling or manipulating of any part of the genitals, anus or female breast by any part of the body or by any object or causing a person to engage in such contact."  (*Id.*)

I.    Sexual Partners

As for the first issue, the Court adopts Plaintiff's proposed limitation.  Although this represents a change from how the Court approached the issue during the March 31, 2021 hearing, and although the Court is not usually inclined to reconsider earlier decisions, the key difference is that Plaintiff has now identified legal authorities that help explain (if not fully justify) why she chose to use the phrase "imputing unchastity" in the complaint.  (As noted, the Court expressed some confusion as to this issue during the previous hearing and

Plaintiff was unable, at that time, to cite any legal authorities in support of her position.)

Specifically, in the joint statement, Plaintiff cites §§ 570 and 574 of the Restatement (Second) of Torts.  A review of these provisions helps explain the genesis of the phrase "imputing unchastity."  Section 570 is entitled "Liability Without Proof of Special Harm—Slander."  It identifies four specific categories of defamatory statements that are considered so inherently damaging that the existence of damages is presumed.  The four categories are when "the publication imputes to the other (a) a criminal offense, as stated in § 571, or (b) a loathsome disease, as stated in § 572, or (c) matter incompatible with his business, trade, profession, or office, as stated in § 573, or (d) serious sexual misconduct, as stated in § 574."

Section 574, in turn, is entitled "Slanderous Imputations of Sexual Misconduct."  It provides that "[o]ne who publishes a slander that imputes serious sexual misconduct to another is subject to liability to the other without proof of special harm."  As relevant here, the reporter's note to § 574 explains that although this provision was once limited to "imputing unchastity to a woman," it was subsequently "broadened . . . to imputing serious sexual misconduct."  Comment c to § 574 further explains that this change was rooted in considerations of equal protection, because although "[t]he rule stated in this Section has traditionally not applied to the imputation of unchastity in a man . . . [c]onstitutional requirements as to equality of treatment between the sexes may affect the holdings that an imputation of unchastity for a woman is slanderous *per se* while a similar imputation for a man is not."  *See also* Smolla, 2 Law of Defamation § 7:18 (2d ed. May 2021 update) ("The more substantial objection to this category of slander *per se* is that it is quite blatantly sexist and discriminatory, and is based on outmoded assumptions about sexual behavior.  Sex-based classifications very similar to the 'unchastity of a woman' rule have been struck down by the United States Supreme Court as violative of the equal protection clause.  The traditional rule clearly appears unconstitutional.  An allegation of unchastity is either sufficient to be slanderous *per se* for both men and women, or for neither.  The Restatement Second takes a laudable lead in this area . . . ."); *Rejent v. Liberation Publications, Inc.*,

197 A.D.2d 240, 245 (N.Y. App. Div. 1994) ("[T]he notion that while the imputation of sexual immorality to a woman is defamatory *per se*, but is not so with respect to a man, has no place in modern jurisprudence.  Such a distinction, having its basis in a gender-based classification, would violate constitutional precepts.").

This backdrop helps explain why Plaintiff chose to insert the phrase "imputing unchastity" into her complaint.  The Court is satisfied that it was not an attempt to hold Defendant liable under the outmoded theory that women are expected to be chaste and thus any accusation of sexual conduct lodged against a woman, irrespective of the nature of the sexual conduct, is slanderous.  Rather, Plaintiff's narrow theory is, and has always been, that Defendant's alleged statement in August 2019 was defamatory for a specific reason—because it alleged sexual conduct of an incestuous nature.  Thus, the Court interprets Plaintiff's use of the phrase "imputing unchastity" in the complaint as nothing more than an effort to signal her view that, as a matter of Arizona law, damages are presumed when this sort of incest-based defamation claim is raised.[2]

Given this understanding, there is no reason to require Plaintiff to disclose, as part

---

[2]    In the joint notice, Plaintiff argues that the Arizona model jury instructions provide support for her position.  (Doc. 54 at 6.)  On the one hand, it is true that the Use Note to the relevant model instruction on defamation cites § 574 with approval and seems to adopt § 574's broadening construction—the Use Note provides that "[p]resumed damages are available where the defamatory statement imputes to the plaintiff (i) a criminal offense punishable by imprisonment or regarded by public opinion as involving moral turpitude; (ii) an existing sexually transmitted disease or other loathsome and communicable disease; (iii) unfitness for the proper conduct of his lawful business, trade, or profession, or (iv) *serious sexual misconduct*."  RAJI (Civil) 6th, Defamation 8 (emphasis added), *available at* https://www.azbar.org/media/p0onmoso/defamation-2015.pdf.  On the other hand, if Arizona has, in fact, adopted § 574's broadening construction and replaced the phrase "imputing unchastity" with the phrase "serious sexual misconduct," it is unclear why Plaintiff insisted on using the old, outdated language in her complaint.  Further complicating things, Plaintiff's reliance on model jury instructions to establish the current state of the law in Arizona is questionable given that the Arizona Supreme Court does not approve such instructions, *State v. Logan*, 30 P.3d 631, 633 (Ariz. 2001), and some Arizona appellate decisions, which appear to remain good law, use the "imputing unchastity" verbiage.  *Boswell v. Phoenix Newspapers, Inc.*, 730 P.2d 178, 183 n.4 (Ariz. Ct. App. 1985) ("Slander per se in Arizona are statements which charge one with a contagious or venereal disease; *charge that a woman is not chaste*; accusations which tend to injure a person in his or her profession, trade or business; or statements that impute the commission of a crime involving moral turpitude.") (emphasis added).  At any rate, there is no need to decide at this juncture of the case whether Arizona currently follows the "imputing unchastity" or "serious sexual misconduct" standard.  Either way, Defendant is not entitled to conduct discovery into the entirety of Plaintiff's sexual history.

of the discovery process, the entirety of her sexual history.  Only past incestuous conduct would be relevant in providing a truth-based defense to her defamation claim.  Thus, the Court agrees with Plaintiff that her disclosure obligations should be limited to "any relative" with whom she had sexual contact before August 16, 2019, not "any individual" as requested by Defendant.[3]

## II.     Definition Of "Sexual Contact"

As for the second issue, the Court adopts Defendant's proposed approach.  Given that Plaintiff will only be required to disclose past sexual contact with "any relative," it is within the bounds of permissible discovery to require Plaintiff to disclose each instance in which she and such a relative engaged in any direct or indirect touching, fondling, or manipulating of any part of the genitals, anus, or female breast by any part of the body or by any object or causing a person to engage in such contact.

Plaintiff's competing proposal, that she only be required to disclose instances in which she and a relative engaged in "fornication or any other form of sexual intercourse (oral, anal or vaginal)," is too narrow.  That approach would preclude Defendant from learning about any instances in which Plaintiff and a relative engaged in highly sexualized conduct that approached but did not quite meet the definition of intercourse.  If any such incidents exist, Defendant is entitled to learn about them because they may provide a truth-based defense to the pending defamation charge or may, at a minimum, help Defendant discover other information that may provide a defense to that charge.  *See generally Continental Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1018 (D. Ariz. 2020) ("Relevancy in civil litigation is a relatively low bar."); 1 Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 26, at 801-02 (2021) ("For discovery purposes, courts define relevance broadly, stating that information is relevant if it bears on or might reasonably lead to information that bears on any material fact or issue in the action. . . . [C]ourts are quick to point out that discovery is concerned with relevant information—not

---

[3]     Plaintiff is on notice that, in light of this ruling, she will not be allowed during a future stage of this case to argue that the alleged statement was defamatory for some reason other than its implication of incest.

relevant evidence—and that as a result the scope of relevance for discovery purposes is necessarily broader than trial relevance.") (footnotes and internal quotation marks omitted).

Accordingly,

**IT IS ORDERED** that the parties' joint notice of discovery dispute (Doc. 54), which the Court construes as a request by Plaintiff for a protective order, is **granted in part and denied in part**.  As discussed above, (1) discovery is limited to sexual contact between Plaintiff and any relative of Plaintiff before August 16, 2019; and (2) "sexual contact" is defined as any direct or indirect touching, fondling, or manipulating of any part of the genitals, anus, or female breast by any part of the body or by any object or causing a person to engage in such contact.

Dated this 13th day of May, 2021.

Dominic W. Lanza
United States District Judge