**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Briana McKnight, | No. CV-20-01956-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| Brian McKnight, et al., | |
| Defendants. | |

In August 2019, Brian McKnight ("Defendant") posted a video ("Statement") on his social media accounts. (Doc. 25.) During the Statement, Defendant made several comments about his daughter Briana McKnight ("Plaintiff"), most notably "I caught wind that there was an older cousin . . . who was quite possibly having sex with her." In response, Plaintiff has asserted, among other things, tort claims against Defendant for defamation and false light invasion of privacy. (*Id.*)

Now pending before the Court is Defendant's Rule 12(c) motion for partial judgment on the pleadings as to the defamation and false light invasion of privacy claims. (Doc. 61.) For the following reasons, the motion is denied.

**BACKGROUND**

I.  Factual Background

The following facts, presumed true, are derived from Plaintiff's Second Amended Complaint ("SAC") (Doc. 25) and from the video of the Statement that Defendant submitted in support of his motion for judgment on the pleadings (Doc. 65). Plaintiff's

objections to the video are unavailing—the Court may consider the video without converting Defendant's 12(c) motion into a motion for summary judgment because the SAC refers to and relies on the video, which is central to Plaintiff's claims. *See, e.g.*, *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("A court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").

Defendant is a "well-known singer." (Doc. 25 ¶ 1.) Plaintiff is his daughter. (*Id.*) Plaintiff's relationship with Defendant was "conducted out of the public eye, and it was not the subject of media coverage." (*Id.* ¶ 8.) Plaintiff "never publicized the identity of her father or his celebrity status." (*Id.*)

In August 2019, Defendant "posted an entry on his Instagram page regarding his pride in the work ethic of his current wife's son Jack. Shortly thereafter, the defendant's son BJ McKnight ('BJ') . . . posted an entry on his (BJ's) own personal Instagram page accusing the defendant of abandoning his children." (*Id.* ¶ 12.) A few days later, Plaintiff "decided to share aspects of her perceptions of growing up with an unnamed absent father on her personal Instagram page." (*Id.* ¶ 14.)

"[T]he day after [Plaintiff's] post, [Defendant], who had a few hundred thousand followers at the time . . . posted a video clip regarding his sons and [Plaintiff] on his widely followed Instagram and Facebook pages." (*Id.* ¶ 19.) The Statement included at least five distinct remarks: (1) "[m]y daughter is about to turn 18, I'll get to her in a second" (*id.* ¶ 19); (2) "unfortunately along the way, a couple years ago I caught wind that there was an older cousin who was above 18 who was quite possibly having sex with her" (*id.*); (3) "[I] called . . . to the state office for children's affairs there in Arizona" but "never heard anything back" (*id.*); (4) "anything I say is actual and factual" (*id.* ¶ 20); and (5) Plaintiff

went to "one of the most incredible private schools in Arizona, so I don't know where this is all coming from" (*id.* ¶ 23(d)).

II.  Procedural History

On October 8, 2020, Plaintiff filed the complaint, which asserted claims for defamation and false light invasion of privacy.  (Doc. 1.)

On October 12, 2020, at the Court's direction, Plaintiff filed the First Amended Complaint to properly allege the parties' citizenship.  (Doc. 8.)

On February 9, 2021, Plaintiff filed the SAC, which added claims for breach of contract, restitution, breach of the implied covenant of good faith and fair dealing, and specific performance.  (Doc. 25.)

On June 18, 2021, Defendant filed the pending motion.  (Doc. 61.)

On June 22, 2021, Defendant filed a notice of lodging of physical exhibit (Doc. 65) containing a "six-minute, online video post" which Defendant asserts (and Plaintiff does not dispute) is an extended version of the Statement.

On July 7, 2021, Plaintiff filed a response.  (Doc. 68.)

On July 14, 2021, Defendant filed a reply.  (Doc. 70.)[1]

**DISCUSSION**

I.  Legal Standard

A motion for judgment on the pleadings under Rule 12(c) is "functionally identical" to a Rule 12(b)(6) motion to dismiss.  *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n.4 (9th Cir. 2011).  Therefore, a Rule 12(c) motion "is properly granted when, taking all the allegations in the non-moving party's pleadings as true, the moving party is entitled to judgment as a matter of law."  *Fajardo v. County of Los Angeles*, 179 F.3d 698, 699 (9th Cir. 1999).  "For purposes of the motion, the allegations of the non-moving party must be accepted as true, while the allegations of the moving party which have been denied are assumed to be false."  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).

---

[1]  The parties requested oral argument, but this request is denied because the matter is fully briefed and oral argument will not aid the Court's decision.  *See* LRCiv 7.2(f).

II. Analysis

    A. **Defamation**

Arizona "follows the Restatement (Second) of Torts (1977) . . . on claims relating to defamation of a private person." *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz. Ct. App. 2015). *See also Koepnick v. Sears Roebuck & Co.*, 762 P.2d 609, 617 (Ariz. Ct. App. 1988) ("Arizona courts follow the Restatement (Second) of Torts absent authority to the contrary."). Under the Second Restatement, "[t]o create liability for defamation there must be (a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm [*i.e.,* defamation per se] or the existence of special harm caused by the publication [*i.e.,* defamation per quod]." Restatement (Second) of Torts § 558 (1977).

Defendant seeks judgment on Plaintiff's defamation claim for three reasons: (1) his statement is not defamatory because it portrays Plaintiff as the victim of a sex crime; (2) alternatively, his statement is not defamatory because it expresses a matter of opinion completely within his knowledge; and (3) a reasonable listener would not know the statement was about Plaintiff. (Doc. 61 at 6-12.) Each argument is addressed below.

    1. Victim Of A Sex Crime

Defendant's first argument is that the Statement cannot be defamatory because it portrays Plaintiff as the victim of a sex crime. The Court disagrees.

As an initial matter, the conduct described in the Statement—sexual contact between two "cousins," the younger of whom was "about to turn 18" at the time of the Statement and the older of whom "was above 18" at the time of the incident, which occurred "a couple years ago"—is not necessarily criminal conduct under Arizona law. Arizona's criminal incest statute provides that "[p]ersons who are eighteen or more years of age and are within the degrees of consanguinity within which marriages are declared by law to be incestuous and void . . . who knowingly commit fornication or adultery with each other are guilty of a class 4 felony." A.R.S. § 13-3608. The plain language of this statute

suggests that both of the participants must be over the age of 18 for liability to attach, which wasn't the case here. Additionally, even assuming that only one of the participants must be over the age of 18, liability attaches only if the participants were "within the degrees of consanguinity within which marriages are declared by law to be incestuous and void . . . ." And in Arizona, a marriage is considered incestuous and void if it is "between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the one-half as well as the whole blood, and between uncles and nieces, aunts and nephews and between *first cousins* . . . ." A.R.S. § 25-101(A) (emphasis added). Here, the SAC doesn't allege that Plaintiff and her older relative were "first cousins"—it merely states they are "cousins," without identifying the specific degree of consanguinity.

Although the conduct described in the Statement likely qualifies as statutory rape under Arizona law, that conclusion is not certain, either. In Arizona, a "person commits [statutory rape] by intentionally or knowingly engaging in sexual intercourse or oral sexual contact with any person who is under eighteen years of age." A.R.S. § 13-1405. However, Arizona also recognizes the so-called Romeo and Juliet defense, which precludes liability "if the victim is fifteen, sixteen or seventeen years of age, the defendant is under nineteen years of age or attending high school and is no more than twenty-four months older than the victim and the conduct is consensual." A.R.S. § 13-1407(E). Here, the Statement suggests that Plaintiff was between 15 and 17 years old at the time of the incident (because the incident occurred "a couple years ago" and Plaintiff was "about to turn 18" at the time of the Statement), does not negate the possibility that the cousin was in high school at the time of the incident, and seems to suggest that the sexual conduct was consensual. Thus, unless the cousin was more than 24 months older than Plaintiff, the Romeo and Juliet defense could apply. And although it seems likely that the age gap was more than 24 months (because the cousin was already "above 18" at the time of the incident, "a couple years" had passed since the incident, and Plaintiff was "about to turn 18" at the time of the Statement), the imprecision of Defendant's estimate of the passage of time since the incident ("a couple years") makes it difficult to form any conclusive judgment. Defendant

is thus incorrect that "it is indisputable that the purported defamatory statement alleged that Plaintiff was the victim of a sex crime." (Doc. 61 at 7.)

More important, even assuming that the conduct described in the Statement is considered criminal incest and/or statutory rape under Arizona law, Defendant has failed to establish that a statement that describes a minor as a victim of incestuous statutory rape cannot, as a matter of law, give rise to a claim of defamation per se. Under Arizona law, a statement is defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are "of such a nature that the court can presume as a matter of law that the communication will tend to degrade or disgrace the party defamed." *McClinton v. Rice*, 265 P.2d 425, 429-30 (Ariz. 1953). "[T]he standards of defamation necessarily fluctuate with the vicissitudes of time and public opinion. . . . [Courts], of course, have no brief to determine when and whether societal attitudes should change. [Courts] must consider actual damage to reputation in the real world by measuring the defamatory aspect of a publication by its natural and probable effect on the mind of the average recipient." *Yetman v. English*, 811 P.2d 323, 329 (Ariz. 1991).

Relying on non-Arizona cases in which courts suggested that non-consensual sexual activity is "no reflection on character [if] one has been an unwilling victim," *Lemacks v. State*, 427 S.E.2d 536, 537 (Ga. Ct. App. 1993), Defendant argues that sex-crime victimhood cannot qualify as unchastity or serious sexual misconduct under the Second Restatement. (Doc. 61 at 8.) Although the Court understands the point Defendant is attempting to make, the defamation cases cited by Defendant are distinguishable because the purportedly defamatory statements in those cases described sexual conduct that was involuntary and non-consensual in every sense of the word. *Rocky Mountain News Printing Co. v. Fridborn*, 104 P. 956, 960 (Colo. 1909) (plaintiff was "carnally known against her will"); *Bement v. N.Y.P. Holdings, Inc.*, 307 A.D.2d 86, 88 (N.Y. App. Div. 2003) ("Bement claims she was able to fend off most of the advances from officials—but several times was 'raped' by the men she was sent to spy on."). The criminal-law cases cited by Defendant are distinguishable for the same reason. *Lemacks*, 427 S.E.2d at 537

("It is no reflection on character that one has been an unwilling victim of prior crimes. The evidence [in this case involved] a prior forcible sexual offense against the victim[]."); *Raines v. State*, 382 S.E.2d 738, 738-39 (Ga. Ct. App. 1989) ("The fourteen-year-old victim accepted appellant's offer of a ride home. However, appellant drove her to a secluded location and parked. There, she repeatedly rejected appellant's persistent requests for sex. She asked to be driven home or to be allowed to walk home. Appellant refused to drive her home or to allow her to leave the car unless she had sex with him. Finally realizing that . . . she had no other choice, the victim gave in to his sexual demands. . . . [The victim] had not offered any physical resistance to appellant because she had been raped previously and had been counseled against such resistance."); *Summitt v. State*, 697 P.2d 1374, 1378 (Nev. 1985) (Steffen, J., concurring in part and dissenting in part) (incident at issue involved a "child, then age four," who was "a tender-aged victim of a sexual assault").

Here, in contrast, the Statement can be construed as accusing Plaintiff of voluntarily and consensually engaging in incestuous conduct (even though her consent was not, by virtue of her age, legally valid). Defendant has not identified any case, from any jurisdiction, suggesting that such an accusation can never be defamatory. Given this backdrop, and in light of the fact that "[t]he taboo against incest has been a consistent and almost universal tradition with recorded proscriptions against incest existing as early as 1750 B.C." and "has been characterized as one of the most important human cultural developments and is found in some form in all societies," *Smith v. State*, 6 S.W.3d 512, 518 (Tenn. Crim. App. 1999), Defendant is not entitled to judgment on the pleadings based on his theory that Plaintiff's victim status, when viewed through the lens of criminal law, necessarily precludes a finding of defamation.

2. Opinion

Defendant next argues that he "did not allege that Plaintiff, in fact, had sex or incestuous relations with a relative. Rather, [he] clearly stated, '*I caught wind* that there was an older cousin who was above 18 who was *quite possibly* having sex with her.'" (Doc. 61 at 9.) Defendant argues that "I caught wind" and "quite possibly" are

"qualifie[rs]" that prevent the Statement from being "provably false." (*Id.* at 9-10.)

The first portion of this argument is easily rejected. "I caught wind" would communicate to a reasonable viewer that the rest of Defendant's statement was the repetition of an actual or manufactured rumor. In general, "[o]n the quaint homespun logic that '[t]alebearers are as bad as talemakers,' each repetition of a defamatory statement by a new person constitutes a new publication, rendering the repeater liable for that new publication. Each republication is a new tort subjecting the repeater to liability independent of the original publisher: The law deems the repeater to adopt 'as his own' the defamatory statement." 1 Rodney A. Smolla, *Law of Defamation* § 4:87 (2d ed. 2021) (footnotes omitted). *See also Flowers v. Carville*, 310 F.3d 1118, 1128 (9th Cir. 2002) (endorsing this "venerable principle"); *Cepeda v. Cowles Mags. & Broad., Inc.*, 328 F.2d 869, 887 (9th Cir. 1964) ("[H]e may not escape [liability] by falsely attributing to others the ideas to which he gives expression."). Thus, adding the phrase "I caught wind" did nothing to shield Defendant from potential liability.

Nor did Defendant's inclusion of the qualifier that Plaintiff was "quite possibly" having sex with her cousin. In Defendant's view, the use of this phrase shows that he was simply offering a "statement of possibility" that was a "nonactionable opinion." (Doc. 61 at 10.) The problem with this argument is that, even assuming the Statement was an opinion,[2] it was still potentially defamatory.

To be sure, "pure" opinions cannot be defamatory. *MacConnell v. Mitten*, 638 P.2d 689, 692 (Ariz. 1981). Nevertheless, § 566 of the Second Restatement explains that "a statement in the form of an opinion . . . is actionable . . . if it implies the allegation of undisclosed defamatory facts as the basis for the opinion." This doctrine

> derives from the statement's effect on the reader. If an expression of opinion follows from nondefamatory facts that are either stated or assumed, the reader is likely to take the opinion for what it is. Indeed, the reader is free to form another, perhaps contradictory opinion from the same facts. *But when the opinion derives from unstated or unassumed facts, the reader can only*

---

[2] *Ollman v. Evans*, 750 F.2d 970, 978 (D.C. Cir. 1984) ("While courts are divided in their methods of distinguishing between assertions of fact and expressions of opinion, they are universally agreed that the task is a difficult one.").

- 8 -

> *presume that the publisher of the statement is asserting the facts to support the opinion as well*. Thus, the effect is the same as if the unstated facts were specified, and the publisher risks liability if they are defamatory.

*Lewis v. Time, Inc.*, 710 F.2d 549, 555 (9th Cir. 1983) (emphasis added) (citations omitted). Here, a reasonable factfinder could construe the Statement as expressing an opinion derived from an unstated fact (*i.e.,* that Plaintiff did, in fact, have sex with her cousin) and presume that Defendant was asserting that fact to support his opinion. Indeed, because Defendant was confident enough to emphasize that "anything I say is actual and factual" and to pass along the rumor along to law enforcement, a reasonable factfinder could easily construe his use of the phrase "quite possibly" as communicating something closer to "probably."

In *Mitchell v. PlasmaCare, Inc.*, 2011 WL 2181414 (W.D. Pa. 2011), the court confronted an analogous situation. There, the allegedly defamatory statement was that the plaintiff "was probably (quote) 'fucking her uncle too' (unquote)." *Id.* at *6. There, as here, "no basis for that conclusion was given." *Id.* Given that backdrop, the court rejected the defendant's argument that the challenged statement was an opinion incapable of defamatory meaning and cited § 566 in support of the conclusion that "the expression of opinion gives rise to the inference that there are undisclosed facts that justify the forming of the opinion expressed by the defendant." *Id.* at *5.

The Second Restatement's illustrations in § 566, in which an author writes to a third party about his neighbor, help explain why Defendant's Statement may be premised on undisclosed facts. In one scenario, the author simply writes, "I think he must be an alcoholic." Second Restatement § 566, cmt. c. The Second Restatement explains that "[a] jury might find that this was not just an expression of opinion but that it implied that [author] knew undisclosed facts that might justify his opinion." *Id.* In a contrasting scenario, the author writes, "He moved in six months ago. He works downtown, and I have seen him during that time only twice, in his backyard around 5:30 seated in a deck chair with a portable radio listening to a news broadcast, and with a drink in his hand. I think he must be an alcoholic." *Id.* The Second Restatement explains that, because "[t]he statement indicates the facts on which the expression of opinion was based and does not imply

- 9 -

1 others," the author cannot be "liable for defamation."

2 This case resembles the former scenario. Plaintiff points out several missing facts, including the identity of the source, how the source discovered the rumor, the identity of the cousin, whether the source knew the cousin, how Defendant heard about the rumor, where the sexual contact took place, whether anyone else knew about the rumor, and so on. (Doc. 68 at 13). A reasonable factfinder could infer, from the absence of these details in the Statement, that Defendant knew these undisclosed facts and was implicitly proffering them in support of his opinion.

For these reasons, Defendant's reliance on *Others First, Inc. v. Better Business Bureau of Greater St. Louis, Inc.*, 105 F. Supp. 3d 923 (E.D. Mo. 2015), is misplaced. There, the Better Business Bureau published a press release signaling concerns about a charity's (Others First) recent dealings with a controversial businessman (Frazier). *Id.* at 927. Specifically, the press release repeated the commentary of the Bureau's CEO, Corey: "Corey also said it appears that a former associate of Frazier, and perhaps even Frazier himself, may have potential conflicts of interest . . . ." *Id.* Significantly, this assertion was accompanied by a series of factual assertions detailed throughout the full release. *Id.* at 927-28. In an ensuing lawsuit by Others First involving a claim of "injurious falsehood" (which Missouri courts analyze under defamation principles), the court found that Corey's statement qualified as non-actionable opinion in part because "the underlying facts reported in the release that form the basis of Corey's protected opinion . . . are true" and the "related opinion asserting potential conflicts of interest was based on these disclosed facts . . . ." *Id.* at 933. Here, in contrast, such disclosed facts are absent.

In sum, Defendant raised the possibility that Plaintiff had sexual contact with her cousin based on a rumor he deemed credible enough to publish. That confidence was based on facts of which he was aware but did not disclose. Viewers of the video were thus not "free to form another, perhaps contradictory opinion . . . . [The viewer could] only presume that the publisher of the statement [was] asserting the facts to support the opinion as well." *Lewis*, 710 F.2d at 555 (citations omitted). Accordingly, even if the Statement contains an

1 opinion, that opinion relies on unstated facts that could give rise to a defamation claim.

2       3. <u>Identification</u>

3 Defendant's final argument is that a reasonable listener would not know the Statement was about Plaintiff.

"To be actionable as a matter of law, defamatory statements must be published in such a manner that they reasonably relate to specific individuals. While the individual need not be named, the burden rests on the plaintiff to show that the publication was of and concerning him." *Hansen v. Stoll*, 636 P.2d 1236, 1240 (Ariz. Ct. App. 1981) (citations and internal quotation marks omitted). A plaintiff need not prove that "every reader could make the connection, as publication to any individual will suffice. But the [reader's identification of the plaintiff] must be reasonable under the circumstances." *Id* (citation omitted). Once a plaintiff meets this burden, "the question of identification is for the jury to decide." *Id.* at 1241.

Here, the Statement was published in a manner that reasonably related to Plaintiff. The SAC alleges Defendant had "a few hundred thousand followers" at the time of the publication. (Doc. 25 ¶ 19.) It is reasonable to infer that this group included tens or hundreds of Defendant's personal acquaintances, including some of his family members. Indeed, the SAC alleges that "some of [Defendant's children] were named in his post along with his current wife." (*Id.* ¶ 24.) Given those references, and in light of the fact that the Statement was published in response to a family controversy, it is reasonable to infer that some of Defendant's close family members viewed the video. It is reasonable to infer that such viewers would "make the connection" that the Statement was referring to Plaintiff— who was identified as Defendant's estranged 17-year-old daughter, who attended an "incredible" private school in Arizona—even though the Statement did not specifically refer to her by name.

Arizona courts have rejected identifiability challenges under analogous circumstances. In *Hansen*, Stoll was accused of defaming law enforcement officers after they raided his property. *Id.* at 1239. Stoll did not name specific officers but targeted his

- 11 -

comments at "agents" or "federal agents." *Id.* at 1240-41. Nevertheless, the court determined that Stoll was clearly referring to the particular agents who raided his property. *Id.* Even though the average citizen would be unable to identify those agents, it was enough that other officers from the "law enforcement organizations involved" would have known which agents performed the raid. *Id.* at 1241.

Similarly, in *Farrell v. Triangle Publications, Inc.*, 159 A.2d 734 (Pa. 1960), which the Arizona Court of Appeals cited approvingly in *Hansen*, a "newspaper of wide circulation" published an article alleging that a bribe had been "earmarked for division among a number of township commissioners and others." *Id.* at 736. Afterward, Farrell, who was one of the 13 township commissioners, brought a libel action. *Id.* Even though the article did not identify Farrell by name and "did not state that all of the commissioners of the township were parties to the reported corrupt deal," the Pennsylvania Supreme Court concluded that "the ordinary reader of the [newspaper] could naturally and reasonably infer that the defamatory publication referred to the plaintiff, among others." *Id.* at 738. Even if many readers "had not known the identity of all the township's commissioners," it was not unreasonable to conclude that they "were impelled by the scandalous nature of the charges to make inquiry and find out who the commissioners were . . . ." *Id.* at 738-39. Thus, the court concluded that "the article referred to Farrell as an object of its charges and insinuations with sufficient particularity to invest him with a cause of action for libel." *Id.* at 736, 739.

*Stoll* and *Farrell* support the conclusion that the Statement reasonably related to Plaintiff. Contrary to Defendant's arguments about what a "reasonable reader/listener" would believe (Doc. 61 at 11; Doc. 70 at 5-6), it is enough at this stage to show that a single viewer of Defendant's video, with the benefit of insider knowledge, would have reasonably believed Defendant was referring to Plaintiff. Stuart M. Speiser, Charles F. Krause & Alfred W. Gans, 8A *American Law of Torts* § 29:46 (2021) ("[T]he reference may be an indirect one, with the identification depending on circumstances known to the hearers, readers, or viewers, and it is not necessary that every listener, reader, viewer, etc.,

understand it, so long as there are some who reasonably do . . . .").

B. **False Light Invasion of Privacy**

Defendant argues that the false light claim "fails for the same reasons as the defamation claim." (Doc. 61 at 9). Because the Court has rejected Defendant's challenge to the defamation claim, it follows that his challenge to the false light claim fails, too.

Accordingly,

**IT IS ORDERED** that Defendant's motion for judgment on the pleadings (Doc. 61) is **denied**.

Dated this 10th day of September, 2021.

Dominic W. Lanza
United States District Judge