1    **WO**

2

3

4

5

6                  **IN THE UNITED STATES DISTRICT COURT**

7                     **FOR THE DISTRICT OF ARIZONA**

8

9    Briana McKnight,                          No. CV-20-01956-PHX-DWL

10              Plaintiff,                      **ORDER**

11   v.

12   Brian McKnight, et al.,

13              Defendants.

14

15                              **INTRODUCTION**

16          In this action, Plaintiff Briana McKnight ("Plaintiff") initially asserted tort claims

17   against her estranged father, Defendant Brian McKnight ("Defendant"), premised on the

18   allegation that Defendant posted a video on his social media accounts in August 2019 in

19   which he falsely accused Plaintiff of having sex with one of her relatives.  (Doc. 1.)

20   However, Plaintiff later sought and obtained (over Defendant's objection) leave to assert

21   an array of contract-based claims against Defendant premised on the allegation that he

22   violated the terms of a 2003 stipulated judgment arising from an Arizona family law

23   proceeding by failing to maintain a life insurance policy for Plaintiff's benefit that would

24   be worth $1 million by the time Plaintiff turned 18 and graduated from high school.  (Docs.

25   15, 19, 24.)  Afterward, Defendant raised various jurisdictional challenges to the contract-

26   based claims, but those challenges were rejected.  (Docs. 29, 57.)

27          Now pending before the Court is Plaintiff's motion for partial summary judgment

28   on one of her contract-based claims.  (Doc. 73.)  As explained below, the motion is granted.

**RELEVANT BACKGROUND**

The facts set forth below are derived from the parties' summary judgment submissions. Although the facts are generally undisputed, the Court has construed them in the light most favorable to Defendant, as the non-movant, and resolved any factual disputes in his favor.

In November 2001, Plaintiff was born. (Doc. 73-2 at 3 ¶ 3.) Defendant is Plaintiff's biological father. (*Id.* at 3 ¶ 2.)

On November 24, 2003, the Maricopa County Superior Court entered a stipulated judgment of paternity ("the Stipulated Judgment") in an action filed by Plaintiff's mother against Defendant. (Doc. 34 at 17-19.)[1] Among other things, the Stipulated Judgment provided that:

> On or before January 1, 2004, Defendant shall obtain and maintain a whole life, universal life, or similar insurance policy on his life in the face amount of $1 million with the minor child as the sole irrevocable beneficiary. . . . [T]he terms of the policy shall provide that, by the time the minor child reaches the age of 18 and has graduated high school, she will have a million dollar life insurance policy on his life free of any further premium payment obligations. Defendant shall provide [Plaintiff's mother] with a copy of the life insurance policy . . . as soon as he obtains the policy.

(*Id.* at 18-19.)

Pursuant to the Stipulated Judgment, Defendant obtained a $1 million life insurance policy from Transamerica Occidental Life ("Transamerica"). (Doc. 73-3 at 8.) Initially, Defendant identified Plaintiff's mother as the beneficiary. (Doc. 73-4 at 2.) Later, Defendant filed paperwork to designate Plaintiff as the beneficiary. (*Id.* at 5-7.)

In November 2019, Plaintiff turned 18. (Doc. 73-2 at 3 ¶ 3.)

In June 2020, Plaintiff graduated from high school. (*Id.* at 3 ¶ 4.)

On November 4, 2020, Defendant submitted a document to Transamerica entitled

---

[1] The Stipulated Judgment is subject to judicial notice and Defendant has, at any rate, admitted the relevant details concerning its existence and contents. (Doc. 59 ¶ 40 ["Defendant admits the existence of the Contract and that the Contract contains the language quoted in Paragraph 40."]; Doc. 73-2 at 11-12 [admitting Request for Admission Nos. 2-4].)

1    "Request for Full Surrender for Life Insurance Policies."  (Doc. 73-4 at 13-16.)  In this

2    document, Defendant "elect[ed] to surrender the Policy for its net cash value."  (*Id.* at 13.)

3            On November 17, 2020, Transamerica processed the surrender request and mailed

4    a check to Defendant for $74,414.04.  (Doc. 73-5 at 2-3.)

5            On February 9, 2021, Plaintiff amended her complaint to add contract-related claims

6    related to the insurance policy.  (Doc. 25.)

7            On August 5, 2021, Plaintiff filed the pending motion for partial summary

8    judgment.  (Doc. 73.)[2]

9            On September 17, 2021, Defendant submitted an application to Pacific Life

10   Insurance Company ("Pacific Life") for a new $1 million life insurance policy.  (Doc. 80-

11   1 at 3.)  Per the application, Plaintiff would be the primary beneficiary of this new policy.

12   (*Id.* at 2.)  There is no evidence that Pacific Life has issued the requested policy.

13           On September 21, 2021—that is, four days after submitting the application to

14   Pacific Life—Defendant filed a response to Plaintiff's motion.  (Doc. 80.)

15           On October 1, 2021, Plaintiff filed a reply.  (Doc. 81.)

16                                            **DISCUSSION**

17   I.      Legal Standard

18           "The court shall grant summary judgment if [a] movant shows that there is no

19   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

20   of law."  Fed. R. Civ. P. 56(a).  "A fact is 'material' only if it might affect the outcome of

21   the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue

22   in the non-movant's favor."  *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d

23   1119, 1125 (9th Cir. 2014).  The court "must view the evidence in the light most favorable

24   to the nonmoving party and draw all reasonable inference in the nonmoving party's favor."

25   *Rookaird v. BNSF Ry. Co.*, 908 F.3d 451, 459 (9th Cir. 2018).  "Summary judgment is

26   improper where divergent ultimate inferences may reasonably be drawn from the

27

28   _____

     [2]     Plaintiff requested oral argument, but this request is denied because the issues are
     fully briefed and argument would not aid the decisional process.  *See* LRCiv 7.2(f).

1    undisputed facts." *Fresno Motors*, 771 F.3d at 1125 (internal quotation marks omitted).

2            A party moving for summary judgment "bears the initial responsibility of informing

3    the district court of the basis for its motion, and identifying those portions of 'the pleadings,

4    depositions, answers to interrogatories, and admissions on file, together with the affidavits,

5    if any,' which it believes demonstrate the absence of a genuine issue of material fact."

6    *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[T]o carry its burden of production,

7    the moving party must either produce evidence negating an essential element of the

8    nonmoving party's claim or defense or show that the nonmoving party does not have

9    enough evidence of an essential element to carry its ultimate burden of persuasion at trial."

10   *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  "If . . .

11   [the] moving party carries its burden of production, the nonmoving party must produce

12   evidence to support its claim or defense."  *Id.* at 1103.  Summary judgment is appropriate

13   against a party that "fails to make a showing sufficient to establish the existence of an

14   element essential to that party's case, and on which that party will bear the burden of proof

15   at trial." *Celotex,* 477 U.S. at 322.

16   II.      The Parties' Arguments

17           In Count Three of her operative complaint, Plaintiff asserts a claim for breach of

18   contract.  (Doc. 25 ¶¶ 38-46.)  Plaintiff now moves for partial summary judgment on that

19   claim.  (Doc. 73.)[3]  As an initial matter, Plaintiff argues that a claim premised on a violation

20   of the Stipulated Judgment is properly considered a breach-of-contract claim because (1)

21   under Arizona law, a contract for child support becomes an independently enforceable

22   contract once the child turns 18; and/or (2) she is an intended beneficiary of the Stipulated

23   Judgment and thus has standing to enforce it.  (*Id*. at 6-8.)  On the merits, Plaintiff argues

24   that a claim for breach of contract under Arizona law has three elements—the existence of

25   a contract, breach, and resulting damages—and the first two elements are established here

26   because (1) it is undisputed that the Stipulated Judgment exists and (2) Defendant breached

27   _____

     [3]      Although the motion erroneously refers to the breach-of-contract claim as Plaintiff's
28   "Fourth Cause of Action" (Doc. 73 at 1), a review of the second amended complaint reveals
     that the breach-of-contract claim appears in Count Three.

1   his obligations under the Stipulated Judgment by cashing out the insurance policy in lieu

2   of maintaining it for her benefit and delivering it to her.  (*Id.* at 8-9.)  Finally, as for

3   damages, Plaintiff contends that "[t]he fact of her damages is beyond dispute," in light of

4   Defendant's failure to maintain and deliver the insurance policy, and "[t]he precise amount

5   of damages can be established at trial."  (*Id.* at 9-11.)[4]

6           Although Defendant opposes Plaintiff's motion (Doc. 80), he does not dispute many

7   of the factual and legal predicates on which the motion is based.  Specifically, Defendant

8   does not dispute that Plaintiff's claim arising from the Stipulated Judgment is properly

9   characterized as a breach-of-contract claim, that Plaintiff has standing to pursue such a

10  claim, that the Stipulated Judgment required him to maintain a $1 million insurance policy

11  for Plaintiff's benefit, and that he cashed out the insurance policy in November 2020.

12  Nevertheless, Defendant contends that summary judgment should be denied because

13  "Plaintiff has no damages and, absent damages, no claim for breach of contract lies."  (*Id.*

14  at 1.)[5]  In support of his claim that Plaintiff has suffered no damages, Defendant proffers

15  evidence that he applied for a new $1 million insurance policy in September 2021.  (Doc.

16  80-1.)  According to Defendant, this application shows that Plaintiff "will imminently have

17  a $1 million life insurance policy on his life" and that he has substantially complied with

18  his obligations under the Stipulated Judgment.  (Doc. 80 at 3-4.)  Defendant concludes:

19  "Because Defendant has obtained a $1 million life insurance policy to which Plaintiff is

20  the beneficiary, she is in as good a position as she would have been in had the contract been

21  performed.  Any money awarded Plaintiff at this stage would constitute a windfall, and is

22  therefore not allowed."  (*Id.* at 4, citations, quotation marks, and brackets omitted.)[6]

23  ---

[4]      Plaintiff also argues "in the alternative that she would be entitled to summary
24  judgment (or enforcement of the judgment) based on well-known principles of full faith
    and credit even if the Court were to view the underlying contract as having been subsumed
25  into the Stipulated Judgment."  (Doc. 73 at 11-16.)  It is unnecessary to address this
    alternative argument because, as discussed below, Plaintiff is entitled to relief based on her
26  primary argument.

27  [5]      *See also* Doc. 80 at 3 ("The elements of a breach of contract claim are '(1) the
    existence of a contract; (2) breach; and (3) resulting damages.'  The Motion fails to
    establish that Plaintiff has suffered any damages.  Without damages, no claim for breach
28  of contract will lie.") (citations omitted).

[6]      Defendant also responds to Plaintiff's alternative summary judgment arguments.

1    In reply, Plaintiff argues that Defendant's recent application for a new insurance

2    policy has no bearing on the summary judgment analysis because, as of the date she

3    amended her complaint to add the contract-related claims (and also as of the date she filed

4    her summary judgment motion), there was no insurance policy in place.  (Doc. 81 at 1-3.)

5    Plaintiff contends that, under Arizona law, she "became entitled to money damages" at the

6    "moment [Defendant] failed to perform" and her damages must be measured from the date

7    of breach.  (*Id.* at 3.)   In a related vein, Plaintiff argues that, under Arizona law, the

8    aggrieved party in a breach-of-contract action is entitled to choose which remedy to pursue;

9    here she has elected to pursue money damages; and Defendant cannot override her election

10    by identifying his own preferred remedy (*i.e.,* replacement of the policy) and forcing her

11    to accept it.  (*Id.* at 4.)   Plaintiff also contends that Plaintiff's application for a new policy

12    cannot be considered "substantial compliance" because he still hasn't obtained a new

13    policy, the new policy is "materially different" from the sort of policy required under the

14    Stipulated Judgment (because it is not yet fully paid), and requiring her to accept the new

15    policy would thus expose her to "the risk of (1) [Defendant] defaulting in payments, as he

16    did with the last policy, (2) [Defendant] absconding with the cash value of the policy, as

17    he did with the last policy, and (3) [Defendant's] death before the policy is fully paid up."

18    (*Id.* at 4-5.)   Finally, Plaintiff contends that she has established the certainty of damages

19    because her money damages "can be calculated with reasonable certainty" by simply

20    calculating "the present value, based on the Defendant's life expectancy, of $1,000,000."

21    (*Id.* at 6-8.)

22    III.    Analysis

23    Plaintiff is entitled to partial summary judgment on the breach-of-contract claim in

24    Count Three of her operative complaint.  As noted, Defendant does not dispute Plaintiff's

25    ability to pursue a breach-of-contract claim based on the Stipulated Judgment, does not

26    dispute that he was contractually required by the Stipulated Judgment to maintain a fully-

27    paid $1 million life insurance policy for Plaintiff's benefit, and does not dispute that he had

28

_____

(Doc. 80 at 4-5.)

1   breached this obligation (because he cashed out the policy in November 2020) by the time

2   Plaintiff asserted her breach-of-contract claim in February 2021.

3          The sole ground on which Defendant challenges Plaintiff's entitlement to summary

4   judgment concerns the existence (and certainty) of damages, but as Plaintiff correctly

5   points out in her reply, Defendant's belated application for a new insurance policy in

6   September 2021 does not create a disputed issue of fact on those issues.  In Arizona, "the

7   general rule appears to be that the rights of the parties with respect to a breach of contract

8   are fixed at the time of breach and that damages are measured as of that time," although

9   "this is not a rigid rule which the trial court must apply in all situations." *Fairway Builders,*

10  *Inc. v. Malouf Towers Rental Co., Inc.*, 603 P.2d 513, 525-26 (Ariz. Ct. App. 1979).  *See*

11  *also State ex rel. Herman v. Schaffer*, 467 P.2d 66, 75 (Ariz. 1970) ("[T]he State breached

12  its agreement and the measure of damages, if any, should be computed, in accordance with

13  the rule we have set forth herein, at the time that the breach occurred."); 22 Am. Jur. 2d

14  *Damages* § 95 ("Damages for a breach of contract are determined as of the time of the

15  occurrence of the breach . . . .").  Here, Defendant breached his obligations under the

16  Stipulated Judgment no later than the moment he cashed out the insurance policy in

17  November 2020.  The breach remained unremedied at the time Plaintiff amended her

18  complaint in February 2021 to add the breach-of-contract claim.

19         Under Arizona law, Plaintiff was entitled to elect the remedy of monetary damages

20  based on this breach.  *See, e.g.*, *W. Pinal Fam. Health Ctr., Inc. v. McBryde*, 785 P.2d 66,

21  68 (Ariz. Ct. App. 1989) ("Upon the breach of a contract, the party seeking relief has the

22  choice of three remedies: rescind the contract, refuse to treat the breach as a termination of

23  the contract and request that the court compel performance under the contract, or consider

24  the breach to be a termination of the contract and request damages resulting from the

25  breach.").  Defendant cannot avoid his obligation to pay such money damages by belatedly

26  attempting to secure a new insurance policy and proffering those efforts as proof of his

27  specific (albeit only substantial) performance of his contractual obligations.  *Id.* at 70

28  (holding that "[t]he choice of remedies is [plaintiff's], not [defendants']," and that "[a]s the

1   allegedly breaching parties, [defendants] may not require that [plaintiff] elect a preferred

2   remedy."). Finally, although Plaintiff's reply identifies, for the first time, a methodology

3   for calculating her monetary damages arising from the contractual breach, it is unnecessary

4   at this time to determine whether this is the correct methodology as a matter of law. In her

5   motion, Plaintiff only seeks partial summary judgment on the first two elements of her

6   contract claim (existence of contract and breach) and states that "[t]he precise amount of

7   damages can be established at trial." (Doc. 73 at 10.) It is reasonably certain that Plaintiff

8   has suffered *some* damages,[7] so it is appropriate to grant her request for partial summary

9   judgment on liability and defer any calculation of damages until trial. *Cf. Simel v. City of*

10  *New York*, 274 A.D.2d 466, 466-67 (N.Y. App. Div. 2000) ("Since it is uncontroverted that

11  the Knights failed to obtain the insurance required by the lease, the Supreme Court properly

12  granted summary judgment . . . on [the] cross claim alleging breach of contract.

13  Accordingly, the Knights are liable . . . for any damages resulting from their failure to

14  obtain the insurance.") (citations omitted).

15      …

16      …

17      …

18  ———————————

    [7]    Courts have recognized that the failure to obtain a life insurance policy, in violation

19  of a contractual obligation to do so, may result in compensable harm to the anticipated
    beneficiary of the policy. *See, e.g.*, *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 709

20  (Alaska 1972) ("In the event . . . that Bussell failed to discharge his duty to obtain a life
    insurance policy, the estate of Young would have the right to sue for damages for breach

21  of the covenant to procure the life insurance policy. . . . Young, as a third party beneficiary
    of the union contract, was entitled to performance by Bussell of his contractual duty to

22  secure the life insurance. Bussell's contractual duty was established at the time the contract
    was made. A breach of that duty would change his relationship with Young and give rise

23  to the obligation to respond in damages for the breach."); *In re Carter's Estate*, 116 N.W.2d
    419, 420, 422 (Iowa 1962) (in an action involving a breach-of-contract counterclaim

24  against a bank for failing "to procure credit life insurance upon the life of Carter," rejecting
    the bank's argument that the plaintiff "failed to prove any damage due to her failure to

25  establish Carter could have obtained credit insurance from some other source," holding
    that the tort cases cited by the bank were inapposite because they "are not authority on the

26  question of damages for breach of such an agreement," and recognizing that "the question
    of damages in this case will be treated and considered as if a policy in the usual form had

27  been obtained by the bank. The measure of defendant's recovery is the amount recoverable
    had a policy been actually obtained."); *Parsons v. Watley*, 492 S.W.2d 61, 64 (Tex. Ct.

28  App. 1973) ("[T]he trial court properly found Parsons agreed to procure credit life
    insurance on the life of Watley. Parsons failed to discharge this obligation. Therefore he
    is liable now to the plaintiff.").

1    Accordingly,

2        **IT IS ORDERED** that Plaintiff's motion for partial summary judgment (Doc. 73)

3    is **granted**.

4        Dated this 5th day of November, 2021.

5

6

7                                                    Dominic W. Lanza
                                                United States District Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28